IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| **LAVON DAWSON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **6:13-cv-741-AKK** |
| **CAROLYN W. COLVIN,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

Lavon D. Dawson brings this action pursuant to section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). Doc. 1. This court finds that the Administrative Law Judge's ("ALJ") decision—which has become the decision of the Commissioner—is supported by substantial evidence, and, therefore, will **AFFIRM** the decision denying benefits.

### I.  Procedural History

Dawson filed her application for Supplemental Security Income on January

15, 2010, alleging a disability onset date of July 11, 2008, based on systematic lupus, emphysema, depression, anxiety, insomnia, degenerative disc disease, vision problems, myalgia, raynaud disease, and incontinence. (R. 16, 114–22, 134A). She later amended the alleged onset date to January 15, 2010. (R. 418). After the SSA denied her application, Dawson requested a hearing. (R. 79–82, 85). The ALJ held a hearing on June 13, 2011. (R. 16, 414). At the time, Dawson was 47 years old with the equivalent of a high school education and no past relevant work experience. (R. 39, 114). Dawson has not engaged in substantial gainful activity since January 15, 2010. (R. 18).

The ALJ denied Dawson's claim, which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 6–8, 40). Dawson then filed this action pursuant to 42 U.S.C. § 1383(c)(3). Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if

supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)  whether the claimant is currently unemployed;

(2)  whether the claimant has a severe impairment;

(3)  whether the impairment meets or equals one listed by the Secretary;

(4)  whether the claimant is unable to perform his or her past work; and

(5)  whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to

prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. The ALJ's Decision

In performing the five step analysis, the ALJ initially determined that Dawson had not engaged in substantial gainful activity since January 15, 2010, the alleged onset date, and, therefore, Dawson met Step One. (R. 18). Next, the ALJ found that Dawson satisfied Step Two because she suffered from the severe impairments of "degenerative disk disease (DDD) of the lumbar spine, systemic lupus erythematosus (SLE), status post right corneal ulcer and transplant, status post right eye cataract removal, depressive disorder and generalized anxiety disorder (GAD)." *Id.* The ALJ then proceeded to the next step and found that Dawson failed to satisfy Step Three because she "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 23). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can sit a total of six hours in an eight-hour workday with normal breaks. The claimant can frequently balance and climb ramps and stairs, but she cannot climb ropes, ladders or scaffolds. She can occasionally bend, stoop, kneel,

      crouch and crawl. The claimant cannot perform work that requires fine visual acuity or depth perception. Fine visual acuity is defined as more detail than average print found in a newspaper. The claimant is limited to work requiring simple, routine tasks and no more than short, simple instructions and work-related decisions with few workplace changes.

(R. 25). Next, the ALJ determined that Dawson "has no past relevant work." (R. 38). After considering Dawson's age, education, work experience, and RFC, the ALJ determined in Step Five that "there are jobs that exist in significant numbers in the national economy that [Dawson] can perform." (R. 39). Consequently, the ALJ found that Dawson "has not been under a disability, as defined in the [] Act, since January 15, 2010, the amended onset date and the date the application was filed." (R. 40).

## V.  Analysis

      The court turns now to Dawson's contentions that the ALJ failed to include the full extent of limitations caused by Dawson's conditions in the RFC finding. *See* doc. 13 at 12–16. Specifically, Dawson contends that the ALJ erred by failing to (1) obtain an updated MRI and x-ray report; (2) properly consider the combination of Dawson's impairments; and (3) give proper weight to the opinion of examining psychologist Dr. Alan Blotcky. The court addresses each contention in turn.

> A. The ALJ did not err in failing to obtain an updated MRI and x-ray report.

Dawson first contends that the ALJ failed to develop a full and fair record when he did not obtain an updated MRI or x-ray report in conjunction with a consultative exam. Doc. 13 at 13–14; *see Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) ("Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record."). While the ALJ has discretion to order a test where he deems it is warranted, 20 C.F.R. § 404.1517, he is not required to do so "as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007); *see Bailey v. Astrue*, 739 F. Supp. 2d 1365, 1377 (N.D. Ga. 2010) ("[T]he ALJ will . . . order tests when the necessary information cannot be gleaned from the records.").

Although the most recent MRI in the record was taken in October, 2004, (R. 28), the ALJ did not err by failing to order an updated MRI or x-ray because the record does not support Dawson's allegation that either test was required. The ALJ had no need to request an updated MRI or x-ray because Dawson testified that she spends her day sitting or walking, (R. 430), and she has indicated that she has no limitation in her ability to sit, (R. 161, 170). Dawson's testimony is consistent with

the medical record which shows that in March 2010, examining physician Dr. Samia Moizuddin noted that "[g]ait and station examination reveals midposition without adnormalities. [Dawson] can do heel walk. [Dawson] can do toe walk. [Dawson] is able to squat all of the way." (R. 371). Also, records from Capstone Rural Health Center in 2010 and 2011 revealed no musculoskeletal abnormalities and extended periods without treatment. (R. 31, 328, 397, 403). Additionally, the ALJ noted that no doctor recommended surgery or restricted Dawson's activities based on the 2004 MRI, (R. 28), and no doctor indicated that an updated MRI was required to properly assess Dawson's limitations. Thus, the ALJ was able to account for all limitations due to Dawson's degenerative disc disease and lupus without the need of an updated MRI or x-ray.

  B. <u>The ALJ properly considered the combination of Dawson's impariments.</u>

Next, Dawson contends incorrectly that the ALJ "never really assesses the effect of [Dawson's] severe impairments together as required by law." Doc. 13 at 14. To the contrary, the ALJ specifically found that Dawson does not have a "combination of impairments that meets or medically equals the severity of one of the listed impairments" as required by step three of the five-step analysis. (R. 23). This statement alone is sufficient evidence that the ALJ considered the combined

effect of Dawson's impairments. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224–25 (11th Cir. 2002). Moreover, the ALJ discussed Dawson's degenerative disc disease and lupus, (R. 26–32), vision impairment, (R. 32–33), and various mental limitations, (R. 33–38), when assessing Dawson's RFC, and the ALJ's RFC findings reflect that he considered Dawson's impairments in combination: (1) back limitations—the ALJ found that Dawson "has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can sit a total of six hours in an eight-hour workday with normal breaks. The claimant can frequently balance and climb ramps and stairs, but she cannot climb ropes, ladders or scaffolds. She can occasionally bend, stoop, kneel, crouch and crawl;" (2) visual impairments—the ALJ found that Dawson "cannot perform work that requires fine visual acuity or depth perception. Fine visual acuity is defined as more detail than average print found in a newspaper;" and (3) mental limitations—the ALJ found that Dawson "is limited to work requiring simple, routine tasks and no more than short, simple instructions and work-related decisions with few workplace changes." (R. 25). As is evident, the record belies Dawson's contention that the ALJ failed to consider her impairments in combination.

    C.    <u>The ALJ gave proper weight to Dr. Blotcky's opinion.</u>

Finally, Dawson appears to contend that the ALJ should have given greater weight to the opinion of examining psychologist Dr. Alan Blotcky in assessing Dawson's mental limitations. Doc. 13 at 15–16. However, the opinion of a one-time examiner is not entitled to the same degree of deference as a treating physician. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). This is particularly true when the examiner's opinion is contradicted by other medical evidence. *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007). In this case, the ALJ accorded little weight to portions of Dr. Blotcky's opinion because they were inconsistent with the other evidence in the record. (R. 37–38). Accordingly, the ALJ committed no error.

### VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Dawson is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**Done** the 24th day of February, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE